Good morning, everyone. Welcome. Our first case for argument this morning is Lee v. Harris. Mr. Kius? Good morning, Erin. Very cool as for the appellant. Sean Kius Lee was completely innocent of any such crime that he was charged with. Officer Profelski and Officer Harris controlled the narrative of the investigation of Julian Young's death and with the impetus leading to Sean Kius Lee's arrest, warrant, and grand jury indictment. The charging complaint was drafted by these officers and rubber-stamped by the state's attorney's office. The appellee in this matter tries to argue that the identification of Mr. Lee through Ms. Meanweather gave them probable cause, and they cite the Graminoff's case. But the Graminoff's case basically does say that a single witness can support probable cause and can establish probable cause. But it is clear that no reasonable officer would have ever, ever taken that identification and used that to try to establish probable cause. In Graminoff's, the witness identified at the scene in a contemporaneous manner right after the crime. There was no question the defendant was on the scene. It was collaborated by other witnesses. And the witness who did ID the alleged perpetrator was a reliable witness. In this case, none of that existed. 561 days after the crime, Ms. Meanweather IDs a photo lineup. She did provide a photo earlier than that. Correct. After they brought her in for a second questioning, because there was all this belief that there were numerous other suspects that they were looking at, and there was a question whether Ms. Meanweather was somehow involved in this crime. And she actually had texted somebody that morning. There was allegations that she was sleeping with the driver of this crime. And there was a lot of questions about her. So then when she comes in to deflect, we believe that it's clear that to deflect the investigation upon her and other suspects, she comes in with a picture, can't explain where it comes from. This is the guy that held me at bay with a gun. And of course, 561 days later, surprise, surprise, that she IDs Sean Kisly in a lineup with five or six other fillers as the perpetrator. Of course she is, because she's the one that provided the photo of Mr. Lee to the police. Mr. Lee cooperated immediately with the police when they started to question him. He didn't seek a lawyer. He said, I don't know these people. There was no connection to him, to the scene. There was no connection to him, to the decedents. There was no connection at all. No criminal background. They asked, will you provide DNA? He said, of course I'll provide DNA. Cooperated fully. Where were you on that morning? I was at work. Here's where I work. I've worked there for a long period of time. Well, the police do nothing with that until 561 days later when they actually have a photo lineup with Ms. Meanweather who says, yes, that's the guy. Well, they didn't do nothing. They sent the DNA to be tested. The DNA was tested. And they didn't get the results back until later. They did not get a result until after he was arrested. Right. That wasn't on the police, though. To say the police did nothing, they followed up on that and sent the DNA in to be tested. Correct. But that goes to my later argument that once all this stuff comes back under Manuel, they have all this exculpatory evidence, which clearly dissipates probable cause. How does it impact your argument that the state's attorney is involved in this? The state's attorney is the one who initiated the arrest, called up and said, let's move on this. The state's attorney was involved in the prosecution decisions. You don't have any allegations here that the officers who you brought a claim against withheld something from the state's attorney. So how do we factor that in? The state's attorney doesn't even remember anything about this. But that's a different question. The state's attorney didn't draft up the charges. The police officer drafted up the complaint and the charges. The state's attorney signed it, signed the complaint. Rubber stamped it. Just like if you walk into a grand jury and information is given, it's a rubber stamp. That's all it was. These officers knew, however. The law does not construe a grand jury indictment as a rubber stamp. Correct, Your Honor. I apologize for that. Nor is a state's attorney's signature on an affidavit or complaint charging murder a rubber stamp. That's your characterization of it, but that's not how the law regards it. The law regards probable cause finding of the judge as presumptive proof of probable cause, and you have to overcome that presumption. Well, the presumption was easily overcome because the information that they had regarding Ms. Meanweather as being an unreliable witness was not necessarily tendered to anyone. When they went to get a warrant after they arrested him, and that's another point I want to make, because once they had the identification from Ms. Meanweather, they didn't go out and pick up this alleged murderer. They sat for another several weeks and then sought a warrant. And when they got the warrant, all they basically told the court was they have the surviving victim ID'd him through a photo lineup. That's basically what they told them. There's no evidence that they said, well, she's the one that provided this photo a year ago. Nobody told anyone or judged that there's numerous other suspects. It's simply an ID by a person who's a questionable character, who was questionably involved in this crime. They did nothing. Then they get the warrant. I mean, when he cooperates initially, he tells them, I was working. Again, they don't have to prove his innocence, but he tells them, I was working at this time. After he's arrested, his family comes in and says, I was working, and here's his time card. But at that point, after he's arrested, they told him that, and the officers followed up on it. They went out and talked to his employer, and there wasn't a video there, so they didn't think they could take that as conclusive evidence. And again, you've got the state's attorney involved at that point. She knows this information. The video, there was no video within the premises of Riley's Auto Parts. But their argument was video outside. They did nothing because they said that the manager was so adamant that there was no way he could have been anywhere else because he had to put his key card in. It's a small shop. I'd know if he wasn't here. The law counsel distinguishes between probable cause, so much law on that, and then the concept of arguable probable cause for purposes of this type of case. Is your argument that the facts here do not even rise to arguable probable cause?  Correct. Any reasonable officer would have questioned Ms. Meanweather's motive, would have questioned her ability to ID someone, and no officer would have deprived somebody of their liberty and had them thrown in jail for 13 months based on a woman's testimony who arguably was involved in this crime, that he is the guy. And there was nothing, not once until of evidence connecting him to anybody that was involved in this crime, not once until of evidence that he had anything to do with the premises, the people, or had any connection to this location. And there was no evidence that he could have possibly done it because his manager said he was working that day. Okay, counsel, if I could redirect you to the actual legal issue in this case. We have a judicial finding of probable cause in this case. That is presumptively entitled to deference in a claim of this sort. So you don't start, you're not starting at the right place. You have to demonstrate that the officers intentionally or recklessly withheld material facts from the judge. And so let's start with that. They withheld the fact that Ms. Meanweather was arguably a suspect in this matter. They withheld the fact that she's the one that provided the photo after her second interview. That's a very important fact because, of course, she's going to identify him because she's the one that found the photo. What should we make of the fact that the same judge who issued the arrest warrant here, once he found out all this additional information you're identifying, declined to release the defendant? Declined to release him, but there was no argument that the charge should have been dismissed. There was no argument sought. I know. Again, that's a different question. What should we make of the fact that the information that you are claiming was not in the arrest warrant? The judge who issued that arrest warrant, once he learned of that information, still kept your client detained. Does that impact the analysis at all? I think no because I think he just said the state's attorney's prosecution let them prosecute the case. But it wasn't about prosecution. It was about detention, which is within the judge's purview. Mr. Lee was detained and their motion was denied. Do we know how many bail motions there were over the course of the 14 months that he was detained? No. I'm sorry. I don't have that fact. And so no reasonable officer would believe that they had probable cause to arrest. And then after the arrest, under Emanuel, there was information that came out that basically cleared him. At that point in time, after the arrest, the supervisor of his employer came in, not came in, but provided information that he could not have been there because he was with me. The existence of a potential alibi doesn't clear a suspect. Nor does the DNA exclusion. It doesn't clear a suspect, Judge. But what you're basically saying is if this matter is affirmed, anybody in this courtroom could be arrested. If a crime took place this morning and three weeks later, a police officer comes to any one of our homes and says, listen, this person said you're the person that committed the crime. And then they arrest that person. And that person sits there for 13 months and totally cooperates with the police and says, I have nothing to do with this. Show me how I have something to do with this. Here's where I was working. Here's my employer. Any one of us could be sitting for 13 months based on a statement of a woman who had arguably something to do with this crime. And the police knew that. They brought her in again. And once they brought her in again, that's when she shows up with this picture. That's not probable cause. That at best might be some suspicion. But I don't believe that that establishes probable cause. And again, Profelsky and Harris controlled the narrative of this investigation. State's attorney said go ahead, draft up charge. They draft up the charges. Again, granted, the state's attorney signed off on that. But every time a state's attorney signs off on that, that doesn't eliminate an officer's liability under the Fourth Amendment. And under Manuel, once after he was detained, after he was charged, after the grand jury, there is more evidence that comes out whereby he should have been, these charges should have been dropped. And they were, as the evidence shows. Under our law, though, how are the officers responsible for that after the grand jury returns an indictment and it's in the state's attorney's hands? You have not argued that the officers withheld anything or misrepresented anything to the prosecutor here. The prosecutor did not necessarily know of all the alibis, of all the... The evidence supports that everything was turned over to the prosecutor. But an officer also has an obligation... I contend, under a Manuel-type claim, an officer has an obligation to take further actions to make sure charges are dismissed and someone should not be detained. Now, I know the courts are kind of split on that, whether there is an actual Manuel claim or it goes towards damages. But an officer can't just... As they said, they submitted the DNA into the evidence folder. That was it. No, they submitted the DNA to the prosecutor. That's what I meant, to the evidence file of the prosecutor. And then it was put before the judge. I'm sorry? And then it was put before the judge. To release him from detention at that point. But no officer would actually believe that they had probable cause initially. I contend that by affirming the lower court, this court would then say that a police officer could rely on a faulty, clearly a faulty, identification. And allow somebody to sit there, an innocent person, for 13 months in jail while all the exculpatory evidence comes out. Until the new state's attorney basically looked at the charges and said, that's it. Why are we holding this person? Why are we charging this person? Release this person. Because there's not one scintilla of evidence tying Mr. Lee to this crime. Okay, you're out of time.   Mr. Flores. Good morning, Your Honors. Counsel, may it please the court. My name is Matthew Flores, and I represent the defendants, the City of Rockford, Illinois, and Rockford Police Detectives Eric Harris and Brandon Pafelsky. This court should affirm the district court's grant of summary judgment for three reasons. First, the facts in the record support that probable cause existed for Lee's arrest and detention. Second, the record does not contain facts sufficient to overcome the presumption that probable cause existed. And third, both Detective Harris and Detective Pafelsky are entitled to qualified immunity. Men at Weather's identification of Sean Quest Lee provided probable cause to charge him with home invasion and armed robbery. As this court's aware, showing of probable cause for any offense forecloses liability for Lee's claims. The analysis depends on the applicable elements of the criminal statute. Here we have home invasion and armed robbery. Home invasion. What about the credibility issues that Mr. Koulis has identified with the sole witness here? So, the sole witness and victim here, Ms. Men at Weather, there was essentially street talk, rumors that she was complicit in some way with this crime. Those rumors were investigated. The details of those investigations were documented in the police reports made available to the State's Attorney's Office. Ultimately, they went nowhere. There is no facts that support Ms. Men at Weather was involved in any of the criminal activity. There's nothing but rumors and speculation, which is not evidence that can be relied upon. Why did the police wait the amount of time that they did to create the photo array with Lee's picture? So, the photo array with Lee's picture was created after Ms. Men at Weather provided a photograph. Police officers showed the photograph around and attempted to identify him. Following that, another photograph was provided of what turned out to be Mr. Lee and his brother, Cortez Lee. That photograph allowed them to identify Mr. Lee by name. And once they were able to identify him by name, they created two six-packs, one with Cortez Lee, one with Sean Kesley, and brought Ms. Men at Weather back in so that she could complete the photo lineup. Until they could actually identify who Mr. Lee was by name, it was impossible to create filler photographs and impossible to bring her in for a positive identification. And so that explains the time difference between several weeks after the crime took place and much later down the road when additional evidence came forward, i.e. a photograph plus information that the offender that Ms. Men at Weather identified was a sibling of another person who was alleged to be a perpetrator of the crime. Ultimately, Ms. Men at Weather didn't pick out Mr. Lee's brother from the photo lineups. In this case, the record shows that in the immediate aftermath of the home invasion, Ms. Men at Weather recounted details to police. Her story remained consistent from the immediate aftermath of the crime all the way through her deposition in the civil matter. And although it was 561 days after the crime that Mr. Lee's name was known and a warrant was drafted up, the photograph depicting Mr. Lee was provided in the weeks following the murder. Under Illinois law, a victim providing information that someone forced entry into her home with a firearm and took her property establishes a showing of probable cause for both home invasion and armed robbery. And as this court has said, a victim's identification is sufficient to sustain probable cause for an arrest. As a result, Ms. Men at Weather's statement acting alone provides probable cause for Lee's arrest and detention. And for that reason, summary judgment is proper. Further, the record does not contain facts sufficient to overcome the presumption that probable cause existed in this case. Sean Kisly was arrested by a warrant, so the court presumes that probable cause existed. This court has already noted that the requirements to overcome that presumption are very high. In this case, there are no facts to support that any information was withheld from Judge White in seeking the initial arrest warrant or that Detective Pafelski provided false information to Judge White during the course of the arrest warrant application. The record also doesn't support that this was a mere rubber stamping by the State's Attorney's Office. The lead investigator in this case, Detective Harris, was away at training at the time that State's Attorney Heit-Ross determined that the charges needed to be filed. And so Detective Pafelski, whose only role in this case up to that point had been acting as the independent administrator for the photo lineup, stepped in to assist in drafting the complaint. And in his deposition, he testified that the drafts went back and forth until State's Attorney Heit-Ross determined that it showed what she wanted it to show in the complaint and she signed off on it. Detective Pafelski then went to Judge White with the information in the police reports that was gathered with the complaints that were approved by Heit-Ross and attained a warrant for Sean Quisley's arrest, which was executed on that same day. At the time that Detective Pafelski sought the arrest warrant, the DNA testing results were not back, which he relayed to Judge White. And at that time, Lee had not provided an alibi for his location at the time of the murder. He had not yet been arrested and given that statement. And so the warrant analysis has to exclude that information because it wasn't in the officer's knowledge at the time he went to the court. However, even if Lee's alibi was credited, it does not alter the outcome because an alibi claim is insufficient to overcome probable cause on its own. In part, the claim of the alibi doesn't weaken substantially the relevance and probative value of Men at Weather's identification, which was the evidence that was necessary to cement probable cause. Next, Sean Quisley was indicted by grand jury. This is a prima facie showing of probable cause for the charges he was indicted on. This presumption is overcome by showing that law enforcement obtained the indictment through improper or fraudulent means. However, here, the record does not identify what facts were offered to the grand jury, withheld from the grand jury, or what misleading facts were presented to the grand jury. So for that reason, Lee cannot establish an essential element of his claim. Is your argument as to the malicious prosecution claim that it fails because there was probable cause to prosecute for the crimes or because the officers aren't personally liable, given the state's attorney's role at that point? I think it's both. So there's probable cause for the home invasion and armed robbery, and so that, at the main, knocks out all the claims. But in addition, when you look at some of the cases cited by Appellant Bevere and its progeny, we're talking about police taking custody of somebody pre-Gerstin hearing, before there's a determination of probable cause. And so here, Lee was taken into custody after a determination of probable cause, and after he was indicted. Even if exculpatory information comes to light, the police's obligation is to ensure that the state's attorney is given that information in a timely manner and they can make their decisions. The police don't have keys to the jail or the ability to overturn a prosecutor's discretion. And so the implication that they have to be both investigating agents and jailbreakers to release prisoners when they disagree with the state's attorney, I think, is a dead end. However, if this court were to determine that there were no probable cause for Sean Quesley's arrest, Detective Harris and Detective Papowski are both entitled to qualified immunity because any reasonable police officer would have believed that probable cause existed under these circumstances. Mr. Lee has not shown a U.S. Supreme Court opinion that clearly establishes officers violated his rights by complying with a prosecutor's discretion in bringing charges or that any of the defendants had a constitutional obligation to subvert the state's attorney's discretion to continue the prosecution. Rather, the records show that here the defendants acted reasonably. They investigated the alleged rumors. They investigated other leads. They documented all of these things. They were thorough in their investigations. And they kept the state's attorney's office apprised of those details. The belief in probable cause here is particularly reasonable given the involvement of the state's attorney. And when I say the state's attorney, I'm not making reference to a line-level prosecutor. This was the state's attorney for Winnebago County at the time, Marilyn Height Ross, who independently decided to charge Lee. There are no facts in the record that support she relied on any assessment by Detective Harris or Detective Kowalski in making that decision. In the main, Mena Weather was a crime victim who identified her offender. While her credibility was challenged, police investigated and did not find facts that supported claims of her involvement. Notably, all of that information was in reports the state's attorney had access to. Because any reasonable police officer would believe probable cause existed under these circumstances, the defendants are entitled to qualified immunity. For all of these reasons, the defendants respectfully request this court affirm the district court's range of summary judgment in their favor. If there are no further questions, thank you for your time and attention. Thank you. Mr. Kulas, you had used all your time, but I'll give you a minute if you have anything to say by way of rebuttal. If I heard correctly, I take issue with counsel's statement at the time that they sought a warrant, that there was no alibi presented because it's my understanding that on October 15th, they interviewed Mr. Lee. And he indicated, that's when he cooperated, and indicated that he was working and where he worked at that time. Despite that, they did not go seek a warrant for his arrest until November 8th of 2019, and at that point in time, the only thing that was basically told the court was that he was identified by an offender. But the date, the time, and the circumstances leading up to that identification were not provided to the judge who issued that warrant. And any reasonable police officer would have questioned with Ms. Meanweather's testimony, her motive, and actually whether she was reliable in any form or fashion. If there's any other questions? Thank you. Thank you. Our thanks to both counsel. The case will be taken under advisement.